UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

REYNALDO SANCHEZ,

       Petitioner,

v.                                              Civil Action No.  2:20-cv-35

JUSTIN ANDREWS[1], Warden,

       Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* Petitioner Reynaldo Sanchez's ("Petitioner") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 ("the Petition"), ECF No. 1, and the Respondent Justin Andrews, Warden, Federal Correctional Complex ("FCC") Petersburg's ("Respondent") Response and Motion to Dismiss or, in the Alternative,  for Summary Judgment ("Motion for Summary Judgment") and supporting memorandum, ECF Nos. 7–8.  The matter was referred for disposition to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges.   For the following reasons, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ECF No. 7, be **GRANTED** and the Petition, ECF No. 1, be **DISMISSED WITH PREJUDICE.**

---

[1] Justin Andrews has replaced Mark Bolster as Warden of the Federal Correctional Complex, Petersburg and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

# I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was serving a 60-month sentence for Attempted Possession with Intent to Distribute Oxycodone in violation of 21 U.S.C. § 846, and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1). ECF No. 1 at 3. Petitioner was sentenced on September 8, 2017. *Id.* Petitioner was previously housed at Federal Correctional Complex Petersburg, in Petersburg, Virginia ("FCC Petersburg"), but was moved to a residential reentry center in Boston, Massachusetts ("RCC Boston"), on April 15, 2020. ECF No. 6. According to the Bureau of Prisons Inmate Locator, Petitioner was released from BOP custody on October 2, 2020.[2]

## A. Incident Report issued to Petitioner by the Bureau of Prisons

On August 20, 2018, while housed at Federal Medical Center Devens ("FMC Devens"), located in Ayer, Massachusetts, Petitioner was issued an Incident Report (hereinafter "IR No. 1"), which charged him with violation of Bureau of Prisons ("BOP") disciplinary code 104, "possession, manufacture, or introduction of a weapon." ECF No. 1, exhibit B at 9. The staff member's written report states:

> On August 19, 2018 at approximately 5:30 p.m. while conducting random cell searches I began to search cell 331 occupied by inmate Sanchez, Reynaldo register number 99470-038 and inmate Negron, Eric register number 08990-070. I pulled the bottom left cover of the ladder bolted to the bunk beds, after further inspection I found a yellow brush stuck in between the hollow leg of the ladder and the bolt attaching the ladder to the bed. After extracting the brush I noticed it has filed down to a point on the opposite end of the bristles. Activities lieutenant was informed.

ECF No. 1, exhibit A at 7. The incident report was delivered on September 4, 2018, delayed due to a technological failure that prevented IR No. 1 from being written or entered into BOP's system.

---

[2] *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (search by Register Number: 99470-038)(last accessed Dec. 10, 2020).

ECF No. 8 at 3.  On September 24, 2018, the staff member revised the original report (hereinafter

"IR No. 2").  ECF No. 1, exhibit B at 8; ECF No. 8.  Petitioner was advised of the revision on

October 1, 2018.  ECF No. 8 at 4.  The revised report states:

> On August 19, 2018 at approximately 5:30 p.m. while conducting random cell searches in my assigned post (G-B), I began to search cell 331 occupied by inmate Sanchez, Reynaldo register number 99470-038 and inmate Negron, Eric register number 08990-070. I pushed down with the toe of my boot to remove the bottom left end cover of the ladder bolted to the bunk beds, after further inspection I found a yellow tooth brush stuck inside between the hollow leg of the ladder and the bolt attaching the ladder to the bed. After extracting the tooth brush I noticed it has sharpened to a point on the opposite end of the bristles. The tooth brush was yellow in color, hard plastic, approximately 6 inches long, and sharpened on four sides like a pyramid. The tooth brush appeared to be new, there were no signs of it been utilized, bristles were white and straight, no signs of cross contamination of rust from long exposure from the location it was stored. I perceived, based on my training from the BOP, the matter it was found and the condition of the brush that it was being manufactured to be utilized as a weapon. Activities lieutenant was informed immediately after the item was secured.

ECF No. 1, exhibit B at 8.  During the investigation after being advised of his rights, Petitioner

made the statement: "I had no knowledge it was there. I never checked that area. I thought it was

welded. I checked all the other areas." ECF No. 1, exhibit B at 9.

On October 1, 2018, Petitioner appeared before the Unit Disciplinary Committee ("UDC"),

who referred the matter to the Discipline Hearing Officer ("DHO").  ECF No. 8 at 4.  Petitioner

was given a "Notice of Discipline Hearing Before the DHO" and "Inmate Rights at Discipline

Hearing[.]" ECF No. 8 at 4.  The hearing was held on October 3, 2018 at which time Petitioner

denied knowledge of the weapon and indicated that the cell had been recently searched and no

contraband found.  ECF No. 1, exhibit B at 10-11.  Moreover, Petitioner alleged that his cell was

popular among inmates because of its proximity to the television and as such, another inmate could

have planted the toothbrush in his cell.  *Id.*

The DHO found Petitioner to have committed the prohibited act based on the following evidence: the incident reports and investigation, memoranda and emails from the staff member who found the contraband, photos of the contraband, and a written statement from Petitioner. ECF No. 1, exhibit B at 9. The DHO imposed the following sanctions: (1) Seven days disciplinary segregation; (2) additional thirty days disciplinary segregation was suspended pending ninety days clear conduct; (3) disallowance of forty-one days of good conduct time ("GCT"); and (4) three months loss of commissary privileges. *Id.* at 11.

The DHO completed and signed the DHO Report on October 19, 2018. ECF No. 1, exhibit B at 11. Petitioner received a copy of the report on October 25, 2018. *Id.* On November 6, 2018, Petitioner filed an administrative remedy request ("Regional Appeal") with BOP's Regional Office. *Id.* at 13. On December 13, 2018, the Regional Director rejected Petitioner's appeal, finding that there were no due process concerns or deviations from policy, and the sanctions were appropriate for the offense. *Id.* at 12. Petitioner submitted his appeal ("Central Appeal") to the BOP's Central Office ("Central Office") on March 30, 2018. *Id.* at 15–18. Petitioner's appeal was rejected as untimely because more than thirty days had passed. ECF No. 8, exhibit 1 at ¶21. Petitioner re-submitted his request and on August 21, 2019, the Central Office rejected Petitioner's appeal. ECF No. 1 at 14.

**B. Instant Petition submitted by Petitioner pursuant to 28 U.S.C. § 2241**

On January 16, 2020, while incarcerated in FCC Petersburg, Petitioner filed the instant *pro se* Petition pursuant to 28 U.S.C. § 2241. ECF No. 1 at 1. Petitioner advises that: (1) the DHO proceedings violated his due process rights because the reporting officer revised the report, and (2) the facts of the case were not sufficient to show guilt because the DHO relied on constructive

possession. ECF No. 1 at 4–5. As a remedy, Petitioner requests that his Good Conduct Time be reinstated. *Id.*

## C. Respondent's Motion

On May 15, 2020, Respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 7, along with a supporting memorandum, ECF No. 8, and Roseboro Notice, ECF No. 9. Respondent's Motion argues that IR No. 2 did not materially or substantially alter the facts from the initial report and as such, Petitioner's due process rights were not violated. ECF No. 8 at 10–12. Additionally, Respondent contends that constructive possession establishes Petitioner's possession, even in an open cell shared with others. *Id.* at 13–18. Petitioner did not respond to the dispositive motion, and the time to do so has expired. Therefore, Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 7, is ripe for recommended disposition.

## II. DISCUSSION

Before considering the merits of the instant § 2241 Petition, the Court must ascertain whether it has jurisdiction over Petitioner's claims. Respondent does not dispute that § 2241 is the proper vehicle for asserting this type of claim, and for the reasons explained below, the undersigned **FINDS** that the Court does have jurisdiction to consider the instant § 2241 Petition.

## A. 18 U.S.C. § 2241

Section 2241 petitions (such as the instant Petition) "generally challenge[] the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Gonzalez-Martinez v. Drew*, No. 8:11-cv-00437, 2011 WL 6982247, at *4 n.1 (D.S.C. Dec. 16, 2011) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir.

2001)).  The relevant portion of the statute provides that "(c) The writ of habeas corpus shall not extend to a prisoner unless . . . (3) He is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Because the purpose of a § 2241 petition for a writ of habeas corpus is "to test the legality of detention," a petition can be brought pursuant to 28 U.S.C. § 2241 "'regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him.'"  *United States v. Tootle*, 65 F.3d 381, 383 (4th Cir. 1995) (quoting *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987), *cert. denied*, 502 U.S. 875 (1991) and citing *Arias v. Rogers*, 676 F.2d 1139, 1142 (7th Cir. 1982)).  Here, because the instant § 2241 Petition challenges the way in which Petitioner's disciplinary proceedings were conducted, § 2241 is the proper vehicle by which to assert his claims.

## B. Exhaustion and Procedural Default

Unlike other statutes authorizing a prisoner to seek federal habeas relief, "§ 2241 is silent on exhaustion.  Even so, courts have generally required parties to exhaust available administrative remedies before seeking § 2241 relief from the federal courts."  *Janvier v. I.N.S.*, 174 F. Supp. 2d 430, 434 (E.D. Va. 2001).  After the DHO hearing, Petitioner submitted a Regional Appeal.  ECF No. 1 at 13.  After an unfavorable Regional Appeal, Petitioner submitted an appeal to the Central Office, which is the final administrative appeal level, and received an unfavorable decision on that appeal.  *Id.* at 15–18.  Accordingly, the undersigned **FINDS** that Petitioner sufficiently appealed his claim through the BOP's prescribed administrative remedy scheme and has therefore properly exhausted his remedies.

## C. Custody and Relief requested

At the outset, it appears that Petitioner is unable to receive the relief requested now that he has been released from prison.  "Where a prisoner has a liberty interest in good time credits, the

loss of such credits threatens his prospective freedom from confinement by extending the length

of imprisonment." *Superintendent*, 472 U.S. at 454.  Here, Petitioner seeks return of Good Conduct

Time.  As of April 21, 2020, when Respondent filed his dispositive motion, Petitioner was serving

the remainder of his sentence at a halfway house, supervised by the Philadelphia Residential

Reentry Management field office of the Bureau of Prisons ("BOP"), in Philadelphia, Pennsylvania.

ECF No. 8 at 2.  Petitioner appears to have completed that program, and according to BOP records,

he was released from BOP custody on October 2, 2020.  For purposes of habeas review, a petitioner

remains in custody even if he has been released from their imprisonment because he retains a

liberty interest while on parole.  *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963)("While

petitioner's parole releases him from immediate physical imprisonment, it imposes conditions

which significantly confine and restrain his freedom; this is enough to keep him in the 'custody'

of the members of the Virginia Parole Board within the meaning of the habeas corpus statute").

However, a prisoner's liberty interest in Good Conduct Time, does not transfer to parole.

> Once an inmate is conditionally released from imprisonment, either by parole, including special parole, or mandatory release, the good time earned (extra or statutory) during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the inmate may be required to serve for violation of parole or mandatory release.

28 C.F.R. § 523.2 (C).  Thus, the Good Conduct Time at issue in the instant petition is of no further

effect.  Accordingly, having been released from custody, the Petitioner cannot receive the relief

that he has requested, and his § 2241 Petition for a Writ of Habeas Corpus should be **DISMISSED**

**AS MOOT**.  Nevertheless, for the sake of completeness, the undersigned will proceed to address

the merits of the Petition.

**D. Merits of Petitioner's Claim**

Petitioner contends that his due process rights under the United States Constitution were violated in two ways. First, Petitioner claims that the DHO used "falsified and/or fabricated facts to substantiate guilt of Petitioner". ECF No. 1 at 3. Second, Petitioner claims that "there was not sufficient, conclusive evidence to attribute guilt to Petitioner where contraband was found in [a] secluded and general common are with no knowledge by petitioner." *Id.* at 4. Title 28, section 541 of the Code of Federal Regulations outlines inmate discipline and DHO hearings. Addressing those standards, the Supreme Court has held that, when a disciplinary hearing may result in a loss of Good Conduct Time, due process requires the following throughout the inmate disciplinary process:

> 1) giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;
> 2) providing the prisoner, a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;
> 3) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;
> 4) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by the staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and
> 5) providing impartial fact finders.

*Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).

1. DHO Report Revisions

The federal regulation governing inmate disciplinary proceedings indicates that, "the discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24

hours of staff becoming aware of your involvement in the incident." 28 C.F.R. § 541.5. Specifically, regarding the use of incident reports, due process in a prison disciplinary hearing requires the DHO provide the prisoner with "written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing" 28 C.F.R. §541.8; *Wolff*, 418 U.S. at 556.

Petitioner argues that he was denied due process because the DHO allowed the reporting officer to revise and rewrite the incident report with facts that the petitioner maintains are "falsified and fabricated". Notably, there is no prohibition on revising or rewriting incident reports in 28 C.F.R. § 541. *Staples v. O'Brien*, No. 1:16cv41,2016 WL 8732325, at *6 (N.D. W. Va. July 22, 2016). This is particularly true where, as here, the revisions merely provide greater detail into the specifics of the inspection and discovery of the contraband. Upon comparison of the two reports, there does not appear to be any significant revision that compromises the veracity of the report.

Petitioner specifically takes issue with the revisions in section 11, the description of the incident, where the officer states that he "pulled the bottom left cover of the ladder" where he ultimately discovered the weapon. ECF No. 1 at 7. The revised version clarifies that he "pushed down with the toe of [his] boot to remove the bottom left end cover of the ladder" *Id.* at 8. The revisions at issue simply clarify the specific details of the reporting officer's inspection, and they all appear to be consistent with the initial report. The revisions in no way appear to be falsified or fabricated as Petitioner alleges. Further, in keeping with the due process requirements, the Petitioner received a copy of the revised report on September 24, 2018, more than 24 hours before the disciplinary hearing on October 3, 2018. Therefore, the undersigned finds that Petitioner's due process rights were not violated by the issuance of revisions to the incident report and the Petitioner's claim is without merit.

9

2. Constructive possession

When an inmate brings a habeas petition to challenge the sufficiency of the evidence underlying a revocation of his Good Conduct Time, the requirements of due process are met if "the findings of the prison disciplinary board are supported by 'some evidence' in the record. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 447 (1985). Where a disciplinary violation is based on contraband found in a particular location, "the constructive possession rule provides 'some evidence' of guilt *only when relatively few inmates have access to the area.*" *McClung v. Hollingsworth*, No. 06-6699, 2007 U.S. App. LEXIS 9558, at *8 (4th Cir. Apr. 26, 2007) (emphasis added). If other inmates in a particular area have access to the area where the contraband was discovered, then constructive possession, standing alone, is insufficient to support the violation. *Id.*

Constructive possession is routinely used to hold inmates accountable for disciplinary violations where contraband is found in a shared cell. *See id.* at *10 (applying constructive possession and finding that a weapon found in a shared cell was in the "exclusive domain" of the petitioner and his cellmate even though the cell was unlocked and accessible to other inmates); *Allen v. Young*, No. 5:18-01306, 2019 U.S. Dist. LEXIS 218587, at *30 (S.D. W. Va. June 26, 2019) (citing cases). However, constructive possession cannot be used to support a disciplinary violation where the contraband is found in a "common area." *McClung*, 2007 U.S. App. LEXIS 9558, at *10 (distinguishing an unlocked cell from "a common area akin to a kitchen or a television lounge" where "the constructive possession rule has no application.").

Here, Respondent relies on constructive possession to support the Petitioner's conviction of possessing a weapon in violation of BOP policy. According to the incident report, the weapon was located between the hollow leg of the bunk bed ladder and the bolt attaching the ladder to the

10

bunk beds inside of Petitioner's assigned cell. ECF No. 1 at 8. Petitioner's assigned cell was in an "open style dormitory" unit with no doors and six-foot walls dividing the cells that he shared with his cellmate. *Id.* at 4. Petitioner maintains that he had no knowledge of the weapon being there and that the open layout "give access to approximately 150 other inmates in the unit, making it a common area." *Id.* However, contrary to Petitioner's description of the cell, the specific area where the weapon was found—inside the hollow leg of the ladder attached to Petitioner's bunk bed—appears to be the type of area to which "relatively few inmates had access."

Petitioner relies on *Delgado v. Wilson*, in which the court declined to apply constructive possession because even though the cubicle in which the contraband was found had "six-foot divider walls separating beds" other inmates had access to the area at all times. *Delgado*, 2011 U.S. Dist. LEXIS 147711 at *8–11. While the layout of the cubicle in *Delgado* resembles that of Petitioner's cell, the contraband in Delgado was found throughout the cell. This in turn increased the significance of the cubicle's layout and the plausibility of Delgado's common area defense. According to Delgado "each cubicle in the housing unit was equally accessible to the 150 inmates assigned to the unit . . . . There was no rule prohibiting inmates from entering cubicles assigned to other inmates." *Id.*, 2011 U.S. Dist. LEXIS 14711 *10. Therefore, "[t]here is no way any inmate can prevent other inmates from hiding or placing contraband in the open area of his cubicle while he is away from the housing unit . . . ." *Id.* To the extent that anyone had access to Delgado's cubicle they would have also had access to the locations throughout the cubicle where the contraband was found. Consequently, for purpose of constructive possession, the common areas of Delgado's cubicle where the contraband was found could not be considered the type of area where "relatively few inmates had access." *Id.* at *7.

11

This case is notably different due to the limited time frame and relatively inaccessible area in the hollow leg of the bunk bed ladder where the weapon was found. In fact, the alleged constructive possession in this case more closely resembles that of *McClung v. Hollingsworth.* In *McClung,* a similar weapon was found in the petitioner's unlocked cell that he shared with another inmate. 2007 U.S. App. LEXIS 9558, at *8. In keeping with the "some evidence" standard of review, the Fourth Circuit had previously vacated and remanded the case for an evidentiary hearing specifically regarding the sufficiency of the evidence pertaining to the accessibility of McClung's cell.[3] On remand, the district court concluded that McClung had presented no evidence that other inmates had entered his cell and the area in which the contraband was found was the "exclusive domain" of McClung and his cellmate. *Id.* at *7. On appeal, the Fourth Circuit reviewed the additional evidence and ultimately held:

> [T]he evidence as a whole tended to show that gaining access to the interior of McClung's cell, and the area beneath the cell's desk, [where the contraband was found,] would have been difficult for another inmate. McClung's cell was located in a particularly public area of the unit, and the weapon was located in a particularly inaccessible area within that cell. . . . Given this record, we certainly cannot say that the factual finding of the district court—that McClung's cell was the "exclusive domain" of its occupants—was clearly erroneous

*Id.* at *8–*9. Applying that rationale to the instant petition, there was sufficient evidence presented at the disciplinary hearing to find that Petitioner was in constructive possession of the contraband.

In this case, the weapon was found during a routine search of Petitioner's cell, hidden inside the bunk bed ladder that both Petitioner and his cellmate had access to. ECF No. 1 at 7–8. At the disciplinary hearing, Petitioner put on one witness, his cellmate, and provided both written and oral statements in his defense. *Id.* at 10-11. Petitioner denied knowledge and ownership of the

---

[3] *McClung v. Shearin,* 90 Fed. Appx. 444 (4th Cir. 2004).

weapon claiming he had checked his cubicle for contraband but not that particular area because he thought it was welded. *Id.* Petitioner noted that the cell was searched by another officer earlier that afternoon and it received a clear report. *Id.* The incident and DHO reports both indicated that the toothbrush appeared to be new with "no signs of cross contamination of rust from long exposure from the location it was stored" which suggests the contraband had not been stored inside the bunk bed ladder. *Id.* Petitioner claimed that another inmate must have planted the weapon in his cell and asserted that his cell was popular because of its proximity to the television. *Id.* Despite his defenses, the DHO ultimately found, pursuant to BOP policy in which an inmate is charged with keeping his cell free of contraband, by the greater weight of the evidence, Petitioner was responsible and in possession of a weapon as charged. *Id.*

In the resulting appeal and the instant petition, Petitioner asserts that constructive possession does not apply because the layout of the unit makes his cell a common area for purposes of constructive possession. In light of the Court's rationale in *McClung*, however, constructive possession applies to these facts as there is a distinction between general accessibility to an inmate's cell and the degree of accessibility to the specific location in which contraband is hidden. While Petitioner's cell was in a public area, the evidence as a whole appears to show that gaining access to both the interior of cell and the relatively inaccessible area inside the hollow leg of the bunk bed ladder, after the inspection that had occurred earlier that afternoon, would have been increasingly difficult and unlikely without Petitioner's participation or discovery.

In light of the DHO's consideration of the evidence presented, the factual findings and procedures followed by BOP in this case did not violate Petitioner's Due Process rights, as the DHO finding of constructive possession and the revocation of Petitioner's Good Conduct Time appears to be supported by "some evidence" in the record. *See Superintendent, Mass. Corr. Inst.,*

472 U.S. at 447.  Therefore, the undersigned finds that Petitioner's due process rights were not violated by the DHO's finding of constructive possession and the Petitioner's claim is without merit.

## III. RECOMMENDATION

Accordingly, the undersigned **FINDS** that, in light of Petitioner's release from custody, his petition seeking habeas relief in the form of restoration of good conduct time is **MOOT**. Alternatively, Petitioner's due process rights were not violated when the BOP revised the incident report and relied on constructive possession of a weapon found in his cell to convict Petitioner of the disciplinary violation.  For the reasons stated above, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss, ECF No. 7, be **GRANTED**, and the Petition, ECF No. 1, be **DISMISSED WITH PREJUDICE.**

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1.  Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment

14

of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985);

*Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v.*

*Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

      The Clerk is **DIRECTED** to forward a copy of this Order to the Petitioner, and counsel of

record for the Respondent.

      It is so **ORDERED**.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 14, 2020